IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

PATSY J. WILEY,

        Plaintiff,

vs.                         **Case No. 06-4091-RDR**

MICHAEL J. ASTRUE[1],
Commissioner of Social
Security,
        Defendant.

_____

**MEMORANDUM AND ORDER**

    Plaintiff has filed an application for social security supplemental security income benefits. Plaintiff alleges a disability onset date of June 23, 2003. The application was denied by defendant on the basis of the March 15, 2006 opinion of an administrative law judge (ALJ). This case is now before the court to review defendant's decision to deny benefits.

    STANDARD OF REVIEW

    The court reviews defendant's decision to determine whether the decision was supported by substantial evidence and whether the correct legal standards were applied. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence is such evidence that a reasonable mind might accept to support the conclusion. Rebeck v. Barnhart, 317 F.Supp.2d 1263, 1271 (D.Kan.

---

[1] Michael J. Astrue became Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted for Commissioner Jo Anne B. Barnhart as Defendant in this suit.

2004) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)). The court must examine the record as a whole, including whatever in the record fairly detracts from the weight of the defendant's decision, and on that basis decide if substantial evidence supports the defendant's decision.  <u>Glenn</u>, 21 F.3d at 984.

ALJ DECISION (Tr. 14-17)

There is a five-step evaluation process followed in these cases.  First, it is determined whether the claimant is engaging in substantial gainful activity.  Second, the ALJ decides whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments which are "severe."  At step three, the ALJ decides whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.  Next, the ALJ determines the claimant's residual functional capacity and then decides whether the claimant has the residual functional capacity to perform the requirements of his past relevant work.  Finally, at the last step of the sequential evaluation process the ALJ determines whether the claimant is able to do any other work considering his or her residual functional capacity, age, education, and work experience.

In this case, the ALJ found that plaintiff has not engaged in substantial gainful activity since 1999.  He found that plaintiff has the following "severe" impairments: arthritis of the hips, knees and back; bilateral carpal tunnel syndrome;

obesity; a hernia; and the residual effects of colon surgery and colostomy. He determined that none of these impairments along or in combination with any condition meets or equals the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ found that plaintiff's complaints were not credible to the extent that she asserted an inability to perform sedentary work. He held that plaintiff can sit at least six to eight hours, stand/walk up to two hours, and lift/carry at least ten pounds occasionally and lighter weights frequently, consistent with the demands of sedentary work. Significantly, he concluded at step four of sequential analysis that plaintiff retains the residual functional capacity to perform her former sedentary, semiskilled work as a telemarketer. On that basis, plaintiff's application for benefits was denied.

PLAINTIFF'S ARGUMENTS

Plaintiff's arguments in this matter center upon the ALJ's consideration of plaintiff's residual functional capacity (RFC).

Pain

First, plaintiff argues that the ALJ did not properly evaluate plaintiff's complaints of pain and the impact of such pain upon plaintiff's RFC.

Social Security Ruling 96-7p, 1996 WL 374186, provides a framework for analyzing pain symptoms. It is a two-step process. First, the ALJ must consider whether there is an underlying medically determinable physical or mental impairment that could

reasonably be expected to produce the claimant's pain. Second, if such an impairment has been established, then the ALJ must evaluate the intensity, persistence and limiting effects of the pain and determine the extent to which the pain limits the claimant's ability to work. To the extent that a claimant's description of the pain and its limiting effects is not supported by objective medical evidence, the ALJ must make a finding on the credibility of the claimant's statements based on the consideration of the entire record. This includes: the individual's daily activities; the location, duration, frequency and intensity of the pain; factors that precipitate and aggravate the pain; the type, dosage, effectiveness and side effects of any medication the individual takes for pain; treatment, other than medication, the individual receives for relief; any other measures taken to relieve pain; and any other factors concerning the individual's functional limitations and restrictions due to pain.

Plaintiff testified that while she was working she experienced pain so that she could not sit or stand for a length of time and this led to her being fired from her last job as a telemarketer. (Tr. 378). She further stated that the arthritis in her hips was so painful that she could not perform a telemarketer's job. (Tr. 380). Plaintiff denied that her carpel tunnel surgery was helpful in relieving pain in her right wrist. She said it was very painful and that she could not make a fist

with her right hand. (Tr. 380). She also claimed to have pain in her left wrist. (Tr. 380). Plaintiff described "constant" bleeding with her colostomy which made changing bags a 10 to 15-minute process, 3 times in a 12-hour day. (Tr. 381-82). Plaintiff also related that she had a painful hernia. (Tr. 382). Plaintiff has been prescribed pain pills, Hydrocodone and Naproxen. (Tr. 383). She stated that the pain in her right hand made it difficult to pick up and grasp small objects and that it was painful to bend over, stoop or push and pull. (Tr. 384-85). Plaintiff receives help with cleaning her floors and with grocery shopping. (Tr. 385). She uses a motorized cart. (Tr. 385). She estimated that she could stand for a couple of minutes. She also asserted that she could walk, but it was painful and made her dizzy. (Tr. 386-88). She indicated that pain pills helped her sit during the hearing before the ALJ, but that she was in pain. (Tr. 389). She estimated that she could sit for ten minutes before experiencing discomfort. (Tr. 390).

The ALJ's analysis of plaintiff's complaints of pain reads as follows:

> The Administrative Law Judge has carefully considered the claimant's complaints of pain and restriction, in accordance with 20 CFR 416.929 and Social Security Ruling 96-7p, but does not find them well-supported or persuasive to the extent of precluding sedentary work. In March 2004, her surgeon noted that she was doing fine, feeling was returning to her fingers, and she needed no further follow-up (Exhibit 18F, page 1). Subsequent treatment notes reveal that the claimant was seen for minor illnesses and do not establish the presence of any severe orthopedic limitation that would preclude the claimant from sitting six to eight hours

>      in a workday (Exhibit 20F).  There is no statement in
>      the file that the claimant is "disabled" or unable to
>      work.  On the contrary, another orthopedist found the
>      claimant able to return to work on March 24, 2004
>      (Exhibit 21F).  Neither the medical record nor the
>      claimant's description of her activities indicates that
>      she has significant hand restrictions that would
>      preclude the handling and reaching her former job as a
>      telemarketer required, nor does any evidence
>      demonstrate she is incapable of performing the
>      prolonged sitting contemplated for sedentary work.
>      Although counsel for the claimant has argued that the
>      claimant being fired from her last telemarketing job
>      after only two weeks suggests that she is not able to
>      perform that type of work (Exhibit 9E), it is noted
>      that she worked at her earlier telemarketing job for
>      more than two years, and it [is] not reasonable to
>      think that [her] employer would have retained the
>      claimant for that long if her performance had been
>      unsatisfactory.

(Tr. 16).

Plaintiff's contends initially that the ALJ failed to properly analyze the credibility of plaintiff's complaints of pain because he did not clearly find that there was an underlying medically determinable impairment that could reasonably be expected to produce plaintiff's pain.  We reject this contention.  Plaintiff made a finding that plaintiff suffered from arthritis of the hips, knees and back as well as bilateral carpal tunnel syndrome, obesity, a hernia and the residual effects of colon surgery and colostomy.  This establishes that plaintiff had medically determinable impairments that could reasonably be expected to produce plaintiff's pain.

Plaintiff next contends that the ALJ failed to properly analyze the credibility of plaintiff's complaints of pain because he did not consider the entire record in determining whether

plaintiff's allegations of pain were credible.  Specifically, plaintiff asserts that the ALJ ignored the evidence from Dr. Fortune indicating that plaintiff's right wrist continued to tingle and to be uncomfortable for "prolonged" gripping and pinching.  (Tr. 338-40).  She adds that the ALJ did not discuss the medical evidence of orthopedic limitations in detail and that he made no findings regarding nonexertional limitations.

    Our reading of the ALJ's opinion indicates that he made a fairly comprehensive review of the medical evidence.  He may not have mentioned Dr. Fortune's finding regarding plaintiff's ability to stand for prolonged periods or plaintiff's ability to engage in prolonged gripping and pinching.  Nor did he discuss plaintiff's orthopedic limitations in detail or make findings regarding nonexertional limitations.  But, it is clear that he considered the medical evidence and made findings regarding plaintiff's pain which he felt were relevant to his critical conclusion that plaintiff was not precluded by pain from working at her earlier telemarketing job.  We do not find that the ALJ's analysis of plaintiff's complaints of pain is so deficient that it warrants reversing the decision to deny benefits.  See Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004)(the fact that an ALJ misses, ignores or misinterprets certain evidence in support of disabling pain does not mandate reversal as long as, on the whole record, substantial evidence supports his credibility determination); Campbell v. Astrue, ___ F.Supp.2d

____, 2007 WL 4233579 (D.Kan. 2007)(although plaintiff may point to specific evidence not mentioned by the ALJ, the court cannot reweigh the evidence or substitute its judgment for that of the agency).

### "Nonexertional" limitations and past relevant work

Plaintiff argues secondly that the ALJ improperly failed to make findings with respect to plaintiff's nonexertional capacity and, therefore, erred in evaluating plaintiff's RFC. This argument correlates with plaintiff's final contention that the ALJ failed to discuss evidence or make findings to support his conclusion that plaintiff could return to her job as a telemarketer.

The step four analysis of the sequential evaluation involves three stages: 1) determining plaintiff's RFC; 2) determining the demands of plaintiff's past relevant work; and 3) determining plaintiff's ability to perform his or her past relevant work. Winfrey v. Chater, 92 F.3d 1017, 1023-24 (10th Cir. 1996). Regarding the first stage, plaintiff asserts that the ALJ failed to take into account "nonexertional" limitations in considering plaintiff's RFC. Plaintiff points to a consultative examination which found that plaintiff was limited to occasional climbing, balancing, stooping, kneeling, crouching and crawling; that she was not capable of rapid repetitive hand movements; and that she should avoid concentrated exposure to extreme cold, vibration and

hazards (such as machinery and heights).² (Tr. 350-58). The ALJ stated in his opinion that the results of this consultative examination were "consistent with the overall record and [were] entitled to weight." (Tr. 16). Nevertheless, the ALJ did not make a finding that plaintiff's RFC was limited in those areas. Nor did the ALJ explain why he believed that portion of the examination's findings should not be credited.³

Defendant has responded by stating that: the ALJ found that plaintiff retained the ability to do the handling and reaching required as a telemarketer; Dr. Fortune found that plaintiff could handle coins and buttons; plaintiff received a return to work permit from her physician following carpel tunnel surgery; and that plaintiff testified that she assisted with office work at her apartment complex.

None of these responses directly addresses the failure to consider all of plaintiff's exertional and nonexertional limitations or the failure to explain why the ALJ discounted evidence of such limitations from a source he felt was consistent with the record and deserved weight. Defendant's responses do not directly or convincingly deny that such limitations exist.

---

²Some of these limitations might be considered "exertional" rather than "nonexertional" limitations. See <u>Winfrey</u>, 92 F.3d at 1023.

³The court would also note that the ALJ appeared to accept plaintiff's testimony that she had to change her colostomy bag three times a day and that this was a time-consuming process. There was no specific finding that this was not credible. Yet, this also was not mentioned as a nonexertional limitation.

Rather, defendant appears to be making a case for shortcutting the step four process by going directly to the question of whether plaintiff can perform her past relevant work. The problem with such a shortcut on this record is that the court cannot determine what plaintiff's exertional and nonexertional limitations are, what the demands of plaintiff's work as a telemarketer are, and whether substantial evidence supports that conclusion that plaintiff can perform the work of a telemarketer. The failure of defendant to make inquiry as to the physical and mental demands of a claimant's past relevant work was grounds for reversal in Winfrey. 92 F.3d at 1024-25. This court has followed Winfrey in such cases as Clardy v. Barnhart, 2004 WL 737486 (D.Kan. 2004), Hageman v. Astrue, 2007 WL 4239466 (D.Kan. 2007) and Hull v. Astrue, 2007 WL 4239468 (D.Kan. 2007). We believe reversal and remand are required here.

Remand for further hearing or for an award of benefits?

Plaintiff contends that the court should not remand this case for further fact-finding and instead should remand for an award of benefits. The decision to direct an award of benefits should be made only when the administrative record has been fully developed and when substantial and uncontradicted evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits. Gilliland v. Heckler, 786 F.2d 178, 184-85 (3rd Cir. 1986). We may consider the amount of time the matter has been pending and whether or not a remand for additional fact-

finding would serve a useful purpose or merely delay the receipt of benefits.  <u>Salazar v. Barnhart</u>, 468 F.3d 615, 626 (10th Cir. 2006).  Although plaintiff's application for benefits has been pending for a lengthy period of time, the court cannot say that there is substantial and uncontradicted evidence on the record that indicates that claimant is disabled.  We believe additional fact-finding would serve a useful purpose.  Therefore, the court shall remand this case for additional fact-finding.

CONCLUSION

The decision to deny benefits is reversed and judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) remanding this case to defendant for further proceedings in accordance with this opinion.

**IT IS SO ORDERED.**

Dated this 7th day of January 2008, at Topeka, Kansas

s/Richard D. Rogers
United States District Judge